IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAROL BANDY, *et al.*, | * | |
| Plaintiff(s), | * | |
| vs. | * | Civil Action No.   AW-08-3055 |
| Jeffery Paulin, | * | |
| Defendant. | * | |

******

## MEMORANDUM OPINION

Pending before this Court is Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 93) and Defendant's Cross Motion for Partial Summary Judgment (Doc. No. 103) regarding a dispute as to $500,000.00 in insurance proceeds in the above captioned matter.  The Court held a hearing on February 3, 2010, in which the Court indicated its inclination with respect to the entitlement of $250,000.00 of the Amica life insurance proceeds arising out of a separation agreement entered into by Plaintiff Carol Bandy and the deceased.  During this hearing, the Defendant raised an issue as to whether $250,000.00 of the insurance proceeds should go to Plaintiff Bandy individually or to her as trustee for the benefit of the minor children involved in this action.  Moreover, the Plaintiff raised its concern that Plaintiff Bandy was entitled to the entire $500,000.00 life insurance proceeds under a theory that the deceased lacked mental capacity when he purchased the insurance policy at issue.

The Court subsequently conducted a telephonic hearing, on February 9, 2010, with respect to the issues raised during the February 3, 2010, hearing and in which the Court discussed its concern of a potential conflict of issue between Plaintiff Bandy and her minor children as it relates to the proper award of the money from the life insurance proceeds. During a second telephonic motions hearing, held on February 16, 2010, the parties agreed with the

Court's assessment that the children should be represented by independent counsel[1] in this matter as to all issues raised.[2] The Court sets forth its determination that Plaintiff Bandy and the decedent's separation agreement entitles Plaintiffs to $250,000.00 of the Amica life insurance proceeds; however, at this time the Court takes no position as to whether Plaintiff Bandy and/or the minor children are the legal recipients. Moreover, at present the Court does not express a view as to the remaining $250,000.00 as it relates to the issue of the decedent's mental capacity.

## BRIEF FACTS

Plaintiff Carol Bandy filed a complaint on November 14, 2008, seeking declaratory judgment that she is the rightful beneficiary of several of her deceased ex-husband's payable life insurance policies, in the Circuit Court for Montgomery County, Maryland. The Defendant Metropolitan Life Insurance Company (MetLife) removed this action to this Court on November 14, 2008, (Doc. No. 1) pursuant to 28 U.S.C. § 1331 and § 1441 because Plaintiff's claims against MetLife related to an employee benefit plan and therefore were federal questions governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001.[3] Plaintiff subsequently amended the complaint to add her minor children as Plaintiffs and the deceased's brother, Jeffery Paulin, as a Defendant.

Plaintiff married Steven Paulin ("Steven") on May 5, 1990. The marriage produced two children, N. and I. Paulin, who are minors.[4] In 2003, Plaintiff and Steven filed for divorce in the Circuit Court of Maryland for Montgomery County, Maryland. On November 19, 2003, Plaintiff

---

[1] The Court indicated that it would select and appoint counsel to represent the minor children when it become apparent during the telephonic conference call that the parties were not in agreement as to the procedure for securing such counsel.
[2] Accordingly the Court has asked Defendant to postpone filing of any intended motion for summary judgment regarding the mental capacity issue until after appointed counsel for the children has had time to provide his or her report and positions.
[3] All parties, except Defendant Jeffery Paulin have been terminated from the case. However, the Court still has jurisdiction as this is an interpleader case under Rule 22 of the Federal Rules of Civil Procedure.
[4] In Plaintiffs' Second Amended Complaint (Doc. No. 89), dated June 2, 2009, Plaintiff appears for the first time to allege that she is suing as next of friend on behalf of minor children.

and Steven entered into a property settlement agreement (the "Agreement"). On December 10, 2003, Plaintiff and Steven were divorced, and the Agreement between them was incorporated, but not merged, into the divorce decree.

The relevant portion of the Agreement states the following:

> Steve will carry $250,000.00 in life insurance and Carol will carry $150,000.00 in life insurance. Both policies will be maintained until the youngest child reaches age 24 or graduates from college, whichever comes first.
>
> Carol will be the beneficiary of Steve's life insurance policy until Steve's alimony obligation terminates and thereafter Carol will be named as trustee/beneficiary for the children. Steve will be named as the trustee for the children with respect to Carol's life insurance policy.

(Compl. ¶ 10.)

At the time Plaintiff and Steven entered into the Agreement, Steven possessed a New York Life Insurance Company policy ("New York Life Policy") which he purchased in May of 1997, in the amount of $250,000.00, designating Plaintiff as the beneficiary. On or about May 1, 2004,[5] Steven purchased another life insurance policy from Amica Life Insurance Company (the "Amica Policy" or "Amica I") in the amount of $500,000.00. Steven also designated Plaintiff as the beneficiary of the Amica Policy. On or about February 1, 2008, Steven canceled the $250,000.00 New York Life Policy, which named Plaintiff as beneficiary. Subsequently, on or about February 8, 2008, Steven replaced the Amica Policy with another Amica life policy (the "Replacement Amica Policy" or "Amica II"). There appears to be only two differences between the Amica Policy and the Replacement Amica Policy. First, Amica II names Steven's brother, Jeffery F. Paulin ("Defendant") as beneficiary. Second, the Amica II reduced the annual premium of $915.00 to $530.00.

---

[5] Defendant recalls this as being Sept. 5

On September 23, 2008, Steven committed suicide. Thereafter, Amica determined that "the death benefit under the policy . . . [was] payable," and deposited with this Court the $500,000.00 policy benefit at issue in this action. (Amica Mem. ¶ 5.) The Plaintiff asserts that the Agreement entitles her to $250,000.00 of the latter sum. Additionally, although not an issue in the instant motions, Plaintiff claims that she is entitled to the entire $500,000.00 because Steven lacked mental capacity when he changed the beneficiary of the Amica policy.[6] Conversely, Defendant contends that he is entitled to the entire $500,000.00, or in the alternative, as made clear in the first hearing, that the Plaintiff Bandy is only entitled to $250,000.00 as trustee for the children. While the Court finds that the separation agreement entitles Plaintiff Bandy to $250,000.00 of the insurance proceeds, the Court defers ruling on whether the money should go to Plaintiff Bandy individually or to her as trustee for the children. The Court also does not express a view on the mental capacity issue at this time.

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). When parties file cross motions for summary judgment, the Court must view each motion in a light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). To defeat a motion for

---

[6] Defendant contends that the deceased did not change the beneficiary of the Amica policy, but instead canceled the first Amica policy and purchased a second Amica policy.

summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Both parties have entered Federal Rule 56 motions for summary judgment and agree that there are no genuine issues of material fact. Both parties claim that they are entitled to a judgment as a matter of law in their favor.

## ANALYSIS

**I. Property Settlement Agreements, Incorporated but not Merged into a Divorce Decree, are Subject to the General Rules of Contract Interpretation.**

Under Maryland law, "property settlement agreements which are incorporated, but not merged, into a Judgment of Absolute Divorce" are "subject to the general rules of contract interpretation." *Janusz v. Gilliam*, 947 A.2d 560, 566 (Md. 2008). Questions regarding the contract must be resolved by first looking to the particular language of the agreement at issue. *Pumphrey v. Pumhrey*, 273 A.2d 637, 639 (Md. Ct. Spec. App. 1971). "Where the wording is so clear, a reasonable person must be held to intend to obligate himself to do what the agreement and what the decree absolutely without any question, says he has to do." *Reichhart v. Brent*, 230 A.2d 326, 330 (Md. 1967). "The court may not rewrite the terms of the contract or draw a new one when the terms of the disputed contract are clear and unambiguous, merely to avoid hardship

or because one party has become dissatisfied with its provisions." *Fultz v. Shaffer*, 681 A.2d 568, 578 (Md. Ct. Spec. App. 1996).

"If, however, a reasonably prudent person would consider the contract susceptible to more than one reasonable interpretation, it will be deemed ambiguous." *Id.* "The determination of whether the language is susceptible of more than one meaning includes a consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.'" *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (citation omitted). "Unless doubt about the meaning of the contract requires examination of extrinsic evidence, the construction is a question of law to be decided by the court." *Estate of Altobelli v. IBM Int'l Bus. Machs. Corp.*, 849 F. Supp. 1079, 1082 (D. Md. 1994) (citing *Sands v. Sands*, 249 A.2d 187 (Md. 1969)). Nevertheless, a contract is not ambiguous merely because the parties do not agree as to its meaning. *Fultz*, 681 A.2d at 578.

The Agreement in the present case is subject to the laws of the State of Maryland. Also, both Plaintiff and Defendant appear to agree that the Agreement obligated Steven to maintain a life insurance policy in the amount of $250,000.00, without respect to a specific policy, in which Plaintiff should be named as the beneficiary. Plaintiff asserts that "the Agreement was to delineate each party's responsibilities with respect to the disposition of marital property and the maintenance of life insurance for their benefit and that of their children," and that "the agreement did not identify any particular policy on which Plaintiff was to be named the beneficiary." (Pl.'s Mot. for Summ. J. 10); (Pl.'s Opp'n to Def.'s Cross Mot. for Summ. J. 1.) Defendant concedes that Steven breached the Agreement at the time of his death and that "the Agreement did not require Steven to maintain a specific life insurance policy," thus agreeing with the Plaintiff that the Agreement required the deceased to maintain any life insurance policy in the amount of

$250,000.00 with the Plaintiff as the named beneficiary. (Def.'s Cross Mot. for Summ. J. 2.) Both parties seem to agree on the meaning of the Agreement's language, on this issue, and neither party has asserted that the language is ambiguous or that the Agreement could be interpreted to specifically refer to the New York Life Policy, the only policy existing when the Agreement was executed. Therefore, as instructed by Maryland case law, the Court finds that that Agreement's language is unambiguous and that the Plaintiff and her former husband intended for him to carry life insurance in the amount of $250,000.00, naming her as beneficiary, without requiring that such insurance be held by a specific policy.

II. **The Court has the Power to Enforce an Insurance Maintenance Provision in a Property Settlement Agreement by an Order of Specific Performance.**

"The equity court [] has the power to enforce [an] insurance maintenance provision of [a] separation agreement by an order of specific performance. *Reichhart*, 230 A.2d at 329. Under Maryland law, a provision in a separation agreement, incorporated into a divorce decree, that binds a party to maintain in force life policies naming a specific party as primary beneficiary is a type of contract that a court of equity could grant specific performance entitling the named party to proceeds of the policy; thus, making subsequent changes in the beneficiary ineffective. *Equitable Life Assur. Soc. of the United States v. Jones*, 679 F.2d 356, 358-359 (4th Cir. 1982) (applying the Maryland Court of Appeals holding in *Borotka v. Boulay*, 299 A.2d 803 (Md. 1973)). In *Jones*, the Fourth Circuit (applying Maryland law), held that a husband in a separation agreement incorporated into the divorce decree with his first wife, had an agreement to unconditionally keep life insurance in force and retain his first wife as primary beneficiary, and thus the husband's subsequent change in beneficiary to designate his second wife as the primary beneficiary was ineffective, entitling the first wife to the proceeds. *Jones*, 679 F.2d at 359. Nonetheless, the Fourth Circuit emphasized that if the second beneficiary could establish a

superior equity by demonstrating credible proof that he/she had, without notice of the prior interest, given value for the change of beneficiary, the second beneficiary would be entitled to the life insurance proceeds. *Id.* Disputes as to whether the second beneficiary has superior equity precludes summary judgment. *Id.* at 359.

Considering the facts in the present case and interpreting the Agreement to have obligated Steven to maintain any life insurance policy in the amount of $250,000.00, it seems that Steven did not breach the Agreement until he renamed the beneficiary of the Amica Policy from Plaintiff to Defendant in the Replacement Amica Policy.  Given that when Steven terminated the New York Life Policy, he had the Amica Policy in place that on its own fulfilled his life insurance obligations to Plaintiff, he likely did not breach the Agreement upon termination of the New York Life Policy.  It appears however, that Steven did breach the Agreement when he replaced the first Amica policy with the second in which he named Defendant as beneficiary.  Upon naming Defendant as beneficiary of the Replacement Amica Policy, Steven was no longer maintaining Plaintiff as beneficiary on a life insurance policy in the amount of $250,000.00 and thus was no longer in compliance with the Agreement.

Plaintiff asserts that Steven breached the Agreement when he named Defendant beneficiary of the Replacement Amica Policy, under Maryland law she is entitled to $250,000.00 of the proceeds of that policy, and that Steven's change in beneficiary from Plaintiff to Defendant is ineffective.  Nonetheless, Defendant appears to posit that this Court should grant summary judgment in his favor because the Agreement between Steven and Plaintiff did not specify a particular life insurance policy in which Steven had to carry for the benefit of Plaintiff, and thus as a matter of law, the Agreement should not be applicable to, or make ineffective Steven's change in beneficiary from Plaintiff to Defendant on the Amica Policy.  However,

Defendant does not provide any legal support for his analysis, just hypothetical situations in which Plaintiff would not be entitled to the proceeds. Also, Defendant asserts that since *Borotka* and *Jones* dealt with agreements that had specified life insurance policies in place at the time of the divorce agreements then those cases should not be governing law for this case. However, even though *Borotka* and *Jones* dealt with agreements that specified all life insurance policies in place at the time of the agreement or a specific policy already in place, both the Fourth Circuit and the Court of Appeals of Maryland did not indicate that naming a specific policy was a determining factor in their holdings, thus, the Court believes that both cases are the governing law in this case. Steven obligated himself in the Agreement to maintain any life insurance policy valuing $250,000.00, for the benefit of the Plaintiff. Therefore, the Court finds that the decedent's subsequent change in beneficiary or replacement of the first Amica policy, presumably the only policy at the time fulfilling his life insurance obligation to Plaintiff, was ineffective.

　　　　Lastly, Defendant has not asserted that he has a superior equity right over Plaintiff. Had the Defendant been able to show a superior equity right over Plaintiff by establishing credible proof that he had, without notice of Plaintiff's prior interest, given value for the change of beneficiary, Defendant conceivably would have been able to argue that he was entitled to the life insurance proceeds. In as much as Defendant has not proved a basis to establish a superior equity right, partial summary judgment is granted in favor of the Plaintiffs.

**CONCLUSION**

For the foregoing reasons, the Court will GRANT IN PART Plaintiffs' Partial Motion for Summary Judgment and will appoint independent counsel for the children to address the remaining issues in this matter.  A separate order shall follow this memorandum opinion.

<u>February 19, 2010</u>                                                                   <u>          /s/          </u>
             Date                                                                                      Alexander Williams, Jr.
                                                                                                             United States District Court Judge